## Case No. 7,535.

The JOSEPH CUNARD.

[Olc. 120.] [1]

District Court, S. D. New York. April, 1845.

L. Hoyt. for libellants.
F. R. Tillou, for claimant.

BETTS, District Judge. The proofs produced consisting principally of the charter-party, the letter of instructions to the master, the correspondence and account stated between Davies and Challinor, the depositions of the master and of Davies himself, establish, in substance, this case. That the vessel sailed from London March 1, 1843, under a charter to Challinor. engaging she should arrive at Mobile by the 10th of May, and there be loaded with cotton at the charge and expense of the charterer, but in other respects she was to be under the charge and directions of the owners. She was consigned to John H. Davies, at Mobile. The master was specially instructed not to draw bills on the owners for expenses or disbursements of the ship, but was referred to their agents, Messrs. Pope & Son, at Mobile, for supplies and advances, if necessary. Davies was the agent of the charterer, and saw the charter-party before he made any advances to the master for the vessel, and also the letter of instructions to the master before the bill of exchange was drawn, and the bill was drawn by the master on the owners at the urgent instance of Davies. It is further shown, that the disbursements made by Davies were chiefly for pressing the cotton. and transporting it by lighters from the shore to the vessel, and charges connected with his agency for the charterer in obtaining and shipping the cargo, there being out of the amount of the bill (£590, with exchange), only the sum of about $661.16, which would seem to have any direct application to the necessities or service of the vessel, with the exception of a questionable charge of $87.64 in jail fees, board, &c., advanced in favor of sailors, and including $15 for medical attendance for one of them on shore. I can perceive no foundation under the special appointment of Davies as agent or broker for the charterer in procuring a cargo, and placing it on board, upon which he can raise a claim against the ship or owners for those services, although he may have acted with the concurrence of the master; and even if the owners could be made personally liable for the charges, several of them are not of a nature to admit their being imposed in invitum on the ship, and enforced in rem by an admiralty court. The account charges $1.027.50 for compressing the cotton. This is mere shore business, performed in cotton presses on land, at the port or in the interior, as may be desired by the purchaser. and would probably be alike useful and important whether the transportation is to be on land or on shipboard, the only object being to fit it for more convenient carriage and stowage. Charges for advertising and posting ($10) and commissions on procuring freights ($338.80) on the employment of the charterer, and not that of the owner or master, cannot be regarded demands or services attaching as liens to the vessel. It may be inferrable from the facts. that the freight was expected to be made by purchasing and shipping cotton for the charterer, but there is no higher reason for charging the vessel with commissions on such operation, than upon the purchase price of the cargo itself. Nor would the privilege be varied, if the shipment was solicited or procured by the agent from a third party for consignment to the owner. The service of the agent would be simply a mercantile one rendered on land, and bearing none of the qualities necessary to bring it under the securityship of the vessel. Fur-

thermore, in this case, Davies was employed by the charterer, and had direct notice that the owners had their own agent at the port to respond for the ship. The charge of $457.-60, for stevedores' work, is only for labor at the wharf or moorings of the vessel, in stowing cargo, and is not distinguishable in character from charges of draymen or lightermen, who bring the cargo to the ship to be laden on board.

It has been decided in this court, that stevedores cannot proceed by libel against a vessel for their services in loading or unloading her. The Amstel [Case No. 339]. And the charge of $481.17, for lighterage, would seem in principle to stand on the same footing. It is an employment outside of the vessel, not contributing to her capabilities or security in navigation or serviceable to her voyage; there is no difference of principle, whether the cargo is brought to her side in the stream or placed near her on a wharf. The ship is responsible for disbursements necessary to equip and put her in a condition (by men, provisions, &c) to perform her voyage, but it would be giving a novel extension to the notion and range of tacit liens to subject her also to all claims collateral and incidental to her despatch. A cargo is no more than an incident to a voyage, and in no sense necessary to enable the ship to perform one. Debts arising out of such collateral services or engagements may be chargeable upon the owner personally, as resting upon his implied contracts; but the ship is not necessarily pledged to their satisfaction more than for wages of the master, or other benefits to the mercantile adventure of the owner. In the same category the charge of $70 for commissions, and $41 for insurance on the master's draft, should be placed. There is no reason or equity for the latter charge against the owners. Their letter of instructions to the master shown to Davies, forbids the master drawing on them for necessities of the vessel, and referred him to an adequate resource supplied by them for that purpose, in the port where the expenses were to be incurred. I am of opinion, therefore, that not over $763.80 of the amount claimed could be charged against the ship, had Davies been acting under direction of the master, or as agent of the owners; but under the facts in proof, he must be regarded the particular agent of the charterer, making advances on his credit, and relying on his personal responsibility. This responsibility Davies had strengthened by obtaining an assignment of the bill of lading, freights, &c., as collateral security. If these resources have failed him, there is nothing in the legal relation he bore to the ship or her owners, nor in the equity of his debt, which entitles him to claim that he acted as their agent, or that gave him a privilege upon the ship.

I do not enter into the question, whether taking the bill of exchange by Davies would operate as a waiver of an implied lien against the ship, because, in my opinion, no lien accrued to him out of his transactions in the case. The libellants cannot stand in a better condition than Davies, the drawee and endorsee of the bill; and as he had no claim or lien upon the ship for his demands, he could confer none upon the holder or his assignees. He was apprised that the master was specially instructed by the owners not to draw bills for expenses, repairs, &c., upon them. He knew, also, that the ship was chartered to Challinor, for whom he was agent. In such case it is clear that the owners would not be liable to Davies for any contracts of the master with him. Abb. Shipp. (Ed. 1829) 92; 3 Kent, Comm. 163. The master cannot even bind his owners for repairs, &c., when it is known to the creditor that some other person has authority to manage the business of the vessel in this particular case. Philips v. Ledley [Case No. 11,096].

It is unnecessary to discuss the question, whether the assignment to the libellants by Davies carried with it his privilege of lien for his advances, because, as already stated in the opinion of the court, he was not entitled to claim the security of the vessel for his demands. They can accordingly stand, in that respect, merely in his place, if they hold a full assignment of the original indebtment to him. But it is by no means a clear proposition in law, that a bill of exchange, drawn to cover that debt, and endorsed by him to them, would operate as an assignment of the consideration for which the bill was drawn; and a full assignment of the collateral securities he held for the original claim will not, per se, transfer also the consideration on which the claim rested. But the point of formality or inaptness of the title set up by the libellants, or their capacity to maintain this action, are not material points in the case. The judgment rests upon the broader ground that Davies acquired no right he could transfer to others, or exercise himself, against the vessel by action in rem. The libellants could not, therefore, as holders of the bill of exchange, or assignees of Davies, set up an equity in their favor beyond their strict legal rights. Libel dismissed, with costs.